BARRY J. PORTMAN
Federal Public Defender
JEROME E. MATTHEWS
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant CLIFFORD HARRIS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-07 00345 SBA |
| | ) | |
| Plaintiff, | ) | NOTICE OF MOTION AND MOTION TO SUPPRESS STATEMENTS; |
| | ) | |
| vs. | ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION |
| | ) | |
| CLIFFORD HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TO: PLAINTIFF UNITED STATES OF AMERICA, SCOTT SCHOOLS, UNITED STATES ATTORNEY, AND DEREK BUTTS, SPECIAL ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that on October 16, 2007, at 11:00 a.m, or as soon thereafter as the matter may be heard, Clifford Harris will and does hereby move this Court to suppress statements given to law enforcement agents on the date of his arrest. This motion is made on the grounds that such statements were taken in violation of Mr. Harris's Fifth Amendment privileges under *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Edwards v. Arizona*, 451 U.S. 477 (1981).

The motion is based on the instant notice and motion, the following memorandum of points and authorities, the argument of counsel, and on any other oral and documentary evidence

MOT TO SUPP STMTS                    1

presented at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

**1. Preliminary Statement**

Clifford Harris requests that the Court suppress statements he made to a law enforcement agent following his arrest for possession of narcotics with intent to distribute them. After being booked at the Richmond City Jail, police transported Mr. Harris to an interview room for questioning. During the course of the interrogation, which was recorded on DVD, Mr. Harris made a number of incriminating statements. Mr. Harris made some of these statements, however, prior to being advised of his right to remain silent. Police continued questioning Mr. Harris after he stated he did not wish to discuss the case, and even after Mr. Harris invoked his right to counsel.

For these reasons, the Court should grant Mr. Harris's motion to suppress all statements made during the course of this interrogation.

**2. Background**

In the early morning of April 26, 2007, Richmond Police and FBI agents searched Mr. Harris's residence at 5233 Creely Boulevard, Richmond, California, under the authority of a search warrant signed the previous day.[1] During the course of the search, officers recovered narcotics from various locations within the premises and a firearm from the back yard. Mr. Harris was arrested, taken into custody, and booked at the Richmond City Jail.

At 11:18 a.m. that morning, Richmond Police Detective Pomeroy placed Mr. Harris in a room and began interrogating him. After informing Mr. Harris of the charges against him, Detective Pomeroy stated that Mr. Harris faced spending the rest of his life in prison unless he

---

[1] These facts are taken from a police report provided to the defense. Mr. Harris concedes neither their truth nor accuracy.

was prepared to help himself out by revealing his source.[2] Mr. Harris responded that he wanted to stay out of prison, and could possibly purchase drugs for the police and assist them in obtaining arrests of drug dealers. Detective Pomeroy, pressing for more specific information, asked Mr. Harris what he knew that would help him (Mr. Harris) out, promising Mr. Harris that the recording equipment would be turned off if he agreed to talk.

Needless to say, although Detective Pomeroy left the room, and, after returning, told Mr. Harris that he had turned off the recording equipment, he had done no such thing; the equipment continued to record the interrogation. Detective Pomeroy then read Mr. Harris a *Miranda* admonition. Mr. Harris responded that he did not wish to discuss the case, and shortly thereafter stated that he wanted a lawyer. The interrogation continued, however, and Mr. Harris made a number of incriminating statements.

### 3. Argument

#### A. Police Obtained Statements in Violation of the Fifth Amendment

The Fifth Amendment privilege against self-incrimination governs the admissibility of a defendant's statements. It requires that no person "be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. An accused may invoke this right in either of two ways: He may choose to remain silent or indicate his unwillingness to talk, or he may request the assistance of an attorney. *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966).

Here, Mr. Harris did both. At approximately 11:32:50[3], after interrogating Mr. Harris for about twelve minutes, Detective Pomeroy advised Mr. Harris of his *Miranda* rights. Mr. Harris indicated he understood these rights. Detective Pomeroy then asked if Mr. Harris wanted to

---

[2] The interrogation was recorded on video, and the sequence described in this motion is based on defense counsel's viewing of a DVD provided by the government. Mr. Harris will submit a copy of the DVD for the Court's viewing if it would assist the Court. Mr. Harris does not believe, however, that the government will dispute the details of the interrogation.

[3] The DVD of the interrogation has a time display so that the time at which a particular question was posed or a statement was made may be accurately determined.

1  "take accountability . . . to be responsible for what happened?" (11:33:52) Mr. Harris shook his
2  head. Detective Pomeroy asked, "No?" Detective Pomeroy then asked, "All the stuff in your
3  dresser, you don't know whose it is?" (11:34:20) Mr. Harris replied, "All I'm saying is I don't
4  want to discuss that case, man." (11:33:43) At that point Detective Pomeroy should have
5  respected Mr. Harris's request and ceased further questioning. The *Miranda* Court's directive to
6  law enforcement on this point is unequivocal: "If the individual indicates in any manner, at any
7  time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."
8  *Miranda*, 384 U.S. at 473-74.

9      Detective Pomeroy's interrogation did not diminish, much less cease. He responded to
10 Mr. Harris's *Miranda* invocation by ignoring it, and, although the parties spoke simultaneously
11 during this segment, told Mr. Harris that "sometimes you have to man up, come forward and take
12 responsibility for what you did." (11:34:45) The parties then engaged in a spirited discussion of
13 precisely what the Fifth Amendment is:

14     Mr. Harris: The law is you can keep your [expletive] mouth shut until you
15     see your lawyer. That's the law.

16     Detective Pomeroy: So that's what you want to do? That's not the law;
17     that's a right you have. And that's what you want to do? (11:35:03)

18     Following this colloquy, Mr. Harris stated "I want to have my lawyer, I want to do that,"
19 or words very similar.[4] Having requested an attorney, Detective Pomeroy was obliged to allow
20 Mr. Harris to obtain counsel before any further questioning:

21     [H]aving expressed his desire to deal with the police
       only through counsel, [the defendant] is not subject
22     to further interrogation by the authorities until
       counsel has been made available to him, unless the
23     accused himself initiates further communication,
       exchanges or conversations with the police.

24

25 ─────────────────────
26     [4] The audio portion of this exchange is not clear, but the cited portion represents defense counsel's best efforts at transcription.

MOT TO SUPP STMTS                                          4

1    *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

2    Detective Pomeroy barely paid lip service to Mr. Harris's request for counsel. After
3    leaving the room for about five minutes, he returned, falsely stated that he had turned off the
4    recording equipment, informed Mr. Harris that it was his last chance to talk, and asked him what
5    he was willing to do in terms of providing information. (11:41:15) After questioning Detective
6    Pomeroy's sincerity, Mr. Harris responded that he could provide information on two sources
7    from whom he purchased drugs. (11:43 - 11:45:20) There followed a discussion of Mr. Harris's
8    methodology, including the price, quantity and frequency of his purchases, as well as the location
9    of his source, before Detective Pomeroy terminated the interview at about 12:10 p.m.

10   **B. Suppression is the Appropriate Remedy for A *Miranda* Violation**

11   *Miranda* established that unless a defendant waives his rights against self-incrimination,
12   or is appropriately warned of his rights prior to interrogation, "no evidence obtained as a result of
13   interrogation can be used against him. *Miranda*, 384 U.S. at 479. This rule is constitutionally
14   based, and is so "embedded in routine police practice to the point where the warnings have
15   become part of our national culture." *Dickerson v. United States*, 530 U.S. 428, 443 (2000).

16   In this case, Detective Pomeroy elicited incriminating statements prior and subsequent to
17   advising Mr. Harris of his *Miranda* rights, despite Mr. Harris having invoked both his right to
18   remain silent and his right to counsel. *Miranda* and its progeny direct that these statements are
19   not admissible against Mr. Harris. Accordingly, the Court should suppress all statements
20   obtained as a result of Detective Pomeroy's interrogation.

21   //
22   //
23   //
24   //
25   //
26   //

**4. Conclusion**

For the reasons stated, Clifford Harris respectfully requests that the Court suppress all statements obtained as a result of Detective Pomeroy's interrogation on August 26, 2007.

Dated: September 11, 2007

                                    Respectfully submitted,

                                    BARRY J. PORTMAN
                                    Federal Public Defender

                                          /S/

                                    JEROME E. MATTHEWS
                                    Assistant Federal Public Defender