BARRY J. PORTMAN
Federal Public Defender
JEROME E. MATTHEWS
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant CLIFFORD HARRIS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-07 00345 SBA |
| Plaintiff, | ) ) | **CLIFFORD HARRIS'S SENTENCING MEMORANDUM** |
| vs. | ) ) | **Date: April 1, 2008** |
| CLIFFORD HARRIS, | ) ) | **Time: 10:00 a.m.** |
| Defendant. | ) ) | |

**1. Preliminary Statement**

      Clifford Harris has led what is charitably described as a trying life. His father, whom Mr. Harris has only met twice, was a career criminal and incarcerated for the majority of his life. Mr. Harris started using drugs at age 12, and quickly developed a polysubstance addiction to heroin and cocaine in both crack and powder form. Unfortunately, his addiction had grave consequences: in addition to the ravages visited upon his body by chronic drug use, he became HIV seropositive as a likely result of sharing intravenous needles. His condition later developed into AIDS, which persists to this day.

      In 1998, after cycling in and out of prison, he committed himself to a productive, law-

SENTENCING MEMORANDUM      1

abiding life. He began working at LabCon, a medical supply wholesaler, as an assembly line worker. Despite his debilitating medical condition and a tiresome commute, Mr. Harris excelled at his job, was well-liked by his co-workers, and earned a promotion. Through salary deductions, he obtained medical insurance for himself and his children. After his mother suffered a stroke, he took her into his apartment and cared for her. He maintained steady employment at LabCon for nearly eight years, earning several more promotions, until his AIDS affliction finally rendered him disabled. Equally important, he had no law enforcement contacts during that period.

In 2005 and 2006, his life began to unravel. Despite numerous voluntary enrollments at Walden House to combat his addictions, he relapsed. AIDS began to take a greater toll on his health, causing severe headaches, weight loss, and nerve impairment to the extent that he was unable to continue working. To make matters worse, Mr. Harris's son, Clifford, Jr., was arrested and charged with domestic violence. Because he was the sole source of financial support among family members, everyone looked to Mr. Harris to pay Clifford, Jr.'s legal fees. Facing long-term disability and vanishing finances, Mr. Harris reluctantly turned to dealing drugs to make money and his arrest brings him before this Court.

On April 1, 2008, Mr. Harris intends to plead guilty to a single count information alleging that he maintained a premises for purposes of dealing drugs, in violation of 21 U.S.C. §856(a). He readily acknowledges that he alone is responsible for his conduct, but there are many factors in his life that call for a measure of leniency. For these reasons, Mr. Harris asks that the Court sentence him to 132 months.

**2. Background**

In the early morning of April 26, 2007, Richmond Police and FBI agents searched Mr. Harris's residence at 5233 Creely Boulevard, Richmond, California, under the authority of a search warrant signed the previous day. During the course of the search, officers recovered narcotics from various locations within the premises and a firearm from the back yard. Mr. Harris was arrested, taken into custody, and booked at the Richmond City Jail. The present

SENTENCING MEMORANDUM                 2

1  indictment followed.

2  **3. Comments Regarding the Pre-Sentence Report**

3  Mr. Harris largely agrees with the probation officer's thoughtful and comprehensive report. The parties' guidelines calculation was predicated upon the charged offense of maintaining a drug premises. Because Mr. Harris is a career offender, under USSG §4B1.1 the offense level is based on the statutory maximum for the charged offense, in this case twenty years. The sentencing range of 132 to 188 months attempts to accommodate the parties' respective positions in reaching a just sentence under 18 U.S.C. §3553(a).

The probation officer is correct that if other applicable guidelines provisions result in a higher offense level than that prescribed by §4B1.1, those guidelines control. In this case, application of §2D1.1 would control because the specific offense characteristic of firearm possession would increase the plea-adjusted offense level to 31. It is Mr. Harris's position, however, that application of §2D1.1 would preclude application of Criminal History Category VI, as required by the career offender provision.

A bit of history is in order to explain why this is so. In *United States v. Ventura*, 353 F.3d 84 (1st Cir. 2003), the court held that using Category VI is appropriate even when application of §2D1.1 results in a higher offense level than those required by the career offender guidelines. That case, however, was decided when the guidelines' provision for career offenders stated that Category VI was to be applied "in every case." That language since has been amended to provide that Category VI is to be applied "in every case under this subsection." The subsection to which the amended language refers is §4B1.1(b), which sets forth the table for calculating the offense level based on the statutory maximum of the charged offense. In other words, if Mr. Harris's offense level is being calculated under §2D1.1 instead of §4B1.1(b), the case is not within subsection (b) of §4B1.1. Accordingly, his criminal history category – utilizing §2D1.1 calculations – should be IV, not VI. At offense level 31, Category IV, the resulting range is 151 to 188 months.

SENTENCING MEMORANDUM         3

Because the probation officer notes that both calculations result in a sentencing range of 151 to 188 months, Mr. Harris is prepared to accept either for purposes of determining his offense level and criminal history.

**4. Sentencing Recommendation**

### I.

### **The Components of A Reasonable Sentence**

*United States v. Booker*, 543 U.S. 220 (2005), directs the sentencing court to impose an appropriate sentence, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. Under the post-*Booker* discretionary sentencing regime, there is no longer any question that the advisory Guideline range is only one factor among several that this Court is required to consider in determining what constitutes a reasonable sentence. The Court is free to disagree with Guideline ranges and policy considerations. *See Kimbrough v. United States*, 128 S.Ct. 558, 57 (2007). While circuit courts of appeal may apply a presumption of reasonableness to sentences within the applicable Guidelines range, *Rita v. United States*, 127 S.Ct. 2456 (2007), the district court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id.* at 2465. Nor is it required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences. *Gall v. United States*, 128 S.Ct. 586, 596 (2007). Rather, it must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita*, 127 S.Ct. at 2469.

Sentencing discretion, therefore, is not a hollow term of art. The courts of appeal are limited to reviewing sentences for abuse of discretion and may not presume that a sentence which may be much lower than that suggested by the Guidelines is unreasonable. *Gall*, 128 S.Ct. at 597.

18 U.S.C. § 3553(a), the wellspring from which a reasonable sentence must be drawn, "contains an overarching provision," *see Kimbrough*, 128 S.Ct. at 570, directing the district court

to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. Section § 3553(a) (emphasis added). Those purposes include the need:

- to provide just punishment;
- to create adequate deterrence;
- to protect the public; and
- to provide the defendant with necessary treatment and training.

Section 3553(a)(2).

In sum, "th[e] mandatory system [embodied in § 3553(b)] is no longer an open choice." *Booker*, 543 U.S. at 263. Instead, the district court's duty is to impose the least amount of time necessary to achieve § 3553(a)'s purposes. The Guidelines range is subordinate to that duty.

## II.

### A Sentence of 132 Months is Appropriate in This Case

**A. 132 Months is Just Punishment**

Mr. Harris asks the Court to impose a sentence of 132 months, i.e., 11 years, just 19 months below the low end of the applicable guideline range. He suggests that a number of factors support such a sentence, whether viewed as a modest departure from the low end of the applicable guideline range or merely reflective of § 3553(a)'s directive to impose punishment sufficient but not greater than necessary to achieve the statute's objectives. Among these are Mr. Harris's demonstrable rehabilitative efforts, the stressors that precipitated the offense conduct, his medical condition and the unjustified disparity between sentences based on crack and powder cocaine offenses.

(1) Mr. Harris undertook a committed effort to rehabilitate himself.

In 1998 Mr. Harris reached a turning point in his life. He felt that he had gained the upper hand on his addiction, and for two years had undergone extensive employment training with a medical supply wholesaler called LabCon. Despite the chronic fatigue brought on by his medical condition and a two-hour round trip daily commute, Mr. Harris thrived at his job. He

SENTENCING MEMORANDUM            5

often worked in excess of forty hours per week to gain overtime pay; he got along well with his co-workers; he was always available to take on extra work or learn new skills. Not surprisingly, everyone at LabCon was thrilled with his performance, and he earned constant praise and promotions. Even his parole officer, Agent Arnold Fitt, observed that Mr. Harris was "a good man" who was "eager to work" and "really turning himself around."[1] Mr. Harris managed to maintain his employment with LabCon for nearly eight years. Notably, for the first time in his life Mr. Harris was able to provide financial support for his children, and he requested extra salary deductions to enroll them in his health insurance plan.

In addition to his duties at LabCon Mr. Harris volunteered at Walden House, a well-known recovery and treatment center for drug addicts and alcoholics. His work there permitted him not only to inspire others to overcome their addictions but also to stay close to a support system should he need it.

As luck would have it, Mr. Harris ultimately needed that support system. Despite his best efforts to stay clean, in 2005 Mr. Harris relpased. His AIDS condition had made it increasingly difficult for him to maintain his work schedule, his mother had suffered a stroke and moved in with him, and his son, Clifford, Jr., had been charged with domestic violence and needed a lawyer. Despite the heavy stresses brought on by this turn of events, Mr. Harris did not re-offend but instead sought help. He twice self-enrolled in Walden House to obtain counseling in dealing with his addiction. The mounting problems in his life, however, were exacting a heavy toll. During a visit to his primary care physician on August 9, 2005, it was noted that Mr. Harris had lost 17 pounds; that he confessed he had been using heroin as a result of the stress brought on by his son's criminal case; that his family was "counting on him to pay for all of the lawyers [sic] fees;" and, that he was starting to deal drugs to pay for the fees.[2]

---

[1] Copies of notes and correspondence documenting Mr. Harris's performance at LabCon and on parole are collectively attached as Exhibit A.

[2] A copy of the treating physician's report and assessment is attached as Exhibit B.

SENTENCING MEMORANDUM 6

1    Mr. Harris does not condone his method of coping with the stressors in his life, and
2 others facing similar circumstances may have adopted a strategy that did not involve criminal
3 conduct. But the focus of § 3553(a) is on the defendant, not an archetype. In this case, the
4 defendant is a 52 year old man with a terminal disease and a debilitating drug addiction who tried
5 valiantly to better himself. For eight years he succeeded magnificently: 1998 signaled a clean
6 break with his past and he established a productive life for himself, took care of an infirm
7 mother, and made sure his children had access to health care. When things began to fall apart, he
8 did not revert immediately to dealing drugs, but sought counseling, therapy and medical help.
9 The arrest of his son, Clifford, Jr., seemed to be the breaking point and Mr. Harris ultimately felt
10 that keeping his son out of prison was worth the risk of going back to prison himself. Under the
11 circumstances, a sentence of 132 months is sufficient but not greater than necessary to serve
12 Congress's objectives.

13    (2)  <u>Mr. Harris suffers from a terminal disease</u>.

14    Whether characterized as a guidelines departure or a sentencing factor under section
15 3553(a), a reduced sentence based on a defendant's HIV/AIDS condition finds a wealth of
16 support in reported cases. *See, e.g., United States v. Schein*, 31 F.3d 135, 138 (3d Cir.1994)
17 (where a person is HIV-positive and may have related medical problems, departure may be
18 warranted); *United States v. Streat*, 22 F.3d 109, 112-13 (6th Cir.1994) ("sections of the
19 guidelines could justify a downward departure under certain circumstances" for persons with
20 AIDS); *United States v. Hernandez*, 1991 WL 135635, at *1 (S.D.N.Y. Jul.12, 1991) (downward
21 departure granted for defendant diagnosed with AIDS)*; United States v. Hammond*, 37 F.Supp.2d
22 204 (E.D.N.Y. 1999)(downward departure from 48 to 18 months for defendant in drug case
23 suffering from advanced HIV where family would suffer as well from term of incarceration);
24 *United States v. Velasquez*, 762 F.Supp. 39, 40 (E.D.N.Y. 1991)(life-threatening cancer
25 warranted downward departure from guideline range of 151-188 months to mandatory minimum
26 five-year term).

SENTENCING MEMORANDUM            7

1  Mr. Harris not only suffers from AIDS but, at 52 years old, also is facing a sentence that
2  may cause him to die in prison. Under these circumstances, it is difficult to imagine how a
3  sentence of 132 months would not be sufficient punishment.

4  (3) Imposing the crack cocaine guidelines is unjust.

5  The debate engendered by the crack-powder disparity is now, it appears, evolving into
6  something resembling a consensus that both the relevant statutes and sentencing guidelines are
7  grotesquely unfair. In *Kimbrough*, the Supreme Court forcefully established that § 3553(a)
8  trumped the 100:1 crack to powder ratio, given the Sentencing Commission's repeated
9  determination that the differential does not meet the goals of the Sentencing Reform Act.
10 Accordingly, district courts are free to take into account this unwarranted disparity in imposing
11 sentence under the guidance of the § 3553(a) factors. *Kimbrough*, 128 S.Ct. at 575 - 76.

12 Although Mr. Harris pleaded guilty to violating 21 U.S.C. § 856(a), his guidelines range
13 is still driven by the type and weight of the drugs at issue. In this case, the presence of 76.5
14 grams of crack cocaine wildly skews the calculations. The requested sentence of 11 years
15 exceeds the 10-year statutory minimum for possessing cocaine base with the intent to distribute,
16 and more than sufficiently captures the factors set forth in § 3553(a).

17 **B. A 132 Month Sentence Will Create Adequate Deterrence**

18 A sentence of 11 years is longer than any other sentence imposed upon Mr. Harris, and
19 will sufficiently deter Mr. Harris from committing another crime. This is especially so given Mr.
20 Harris's age. At 52 years old, he is statistically much less likely to re-offend than younger
21 offenders. *See Measuring Recidivism: The Criminal History Computation of the Federal*
22 *Sentencing Guidelines* (May 2004), available at www.ussc.gov/publicat/Recidivism_General.pdf.
23 In conjunction with his medical condition, an 11-year sentence may actually serve to incarcerate
24 Mr. Harris for the rest of his life.

25 **C. A 132 Month Sentence Will Sufficiently Protect the Public**

26 The requested sentence similarly will protect the public. Mr. Harris is not eligible for

SENTENCING MEMORANDUM                8

probation and will not be released back into the community for a very long time.  During that time, he will have access to drug treatment programs and counseling, and, should he survive, be better equipped to overcome the addiction that has caused so many problems in his life.

**D.  Necessary Treatment and Training**

Mr. Harris's need for adequate treatment is especially acute, and this § 3553(a) factor militates *against* imprisonment.  His treating physicians have tried different combinations of AIDS medications – some have worked, some have not.  These medications have horrendous side-effects, including but not limited to, nausea, dizziness, diarrhea, memory loss, vomiting, headaches, nerve damage, rashes, liver problems, insomnia and lightheadedness.  These medications are prescribed as part of a delicate balance of medications whose effectiveness largely is based upon careful tinkering with the precise combination of drugs.  It is imperative that Mr. Harris s continue to receive the quality of treatment that he has been receiving from his primary care physician at Kaiser Permanente.  Although Mr. Harris is sure the Bureau of Prisons will do its best, there is no guarantee that the institution to which he ultimately is designated will provide him with the  same combination of medications that he is currently prescribed.

**5. Conclusion**

For the reasons stated, Clifford Harris respectfully requests that the Court impose a sentence of 132 months.

Dated: March 22, 2008

                                  Respectfully submitted,

                                  BARRY J. PORTMAN
                                  Federal Public Defender

                                  /S/

                                  JEROME E. MATTHEWS
                                  Assistant Federal Public Defender

SENTENCING MEMORANDUM                9