1   JOSEPH P. RUSSONIELLO (CASBN 44332)
    United States Attorney

2

3   BRIAN J. STRETCH (CASBN 163973)
    Chief, Criminal Division

4   DEREK BUTTS (CASBN 172207)
    Special Assistant United States Attorney

5
    1301 Clay Street; Suite 340-S
6   Oakland, California 94612
    Telephone: (510) 637-3771
7   Facsimile: (510) 637-3724
    E-mail: derek.butts@usdoj.gov

8
    Attorneys for Plaintiff
9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      OAKLAND DIVISION

13

14   UNITED STATES OF AMERICA,        )    No. CR 07-00345 SBA
                                       )
15         Plaintiff,                  )    GOVERNMENT'S REPLY BRIEF TO
                                       )    DEFENDANT'S SENTENCING
16   v.                                )    MEMORANDUM
                                       )
17   CLIFFORD HARRIS,                  )    DATE: April 1, 2008
                                       )    TIME: 10:00 a.m.
18         Defendant.                  )
                                       )    Honorable Saundra Brown Armstrong
19

20        For the reasons set forth below, the government disputes the assertion that a sentence of

21   132 months is an appropriate punishment in this case.

22

23                         Efforts At Rehabilitation

24        At page 5, line 13 through page 7, line 12 of the defendant's sentencing memorandum,

25   various reasons are offered to explain if not justify the defendant's relapse into drug use and

26   eventual drug dealing. It cannot be disputed that there is nothing to indicate that the defendant

27   was engaged in illegal behavior from the time of his release from prison in 1998 until 2005.

28   During this time it is noted that the defendant worked at a job and even enrolled his children in

    GOVT. REPLY BRIEF
    CR 07-00345 SBA

1  his health plan. Along with volunteering at Walden House, these activities provide the
2  justification at page 7, lines 4-5 to characterize the defendant as "...a 52 year old man with a
3  terminal disease and debilitating drug addiction who tried valiantly to better himself."

4          Offered as factors leading to the defendant's relapse into drug use are his medical
5  condition, its impact on his ability to work and the fact that his mother began to rely upon him
6  for support. Offered as the primary reason why the defendant turned to dealing drugs was the
7  fact that his son needed an attorney to represent him on a criminal case and the defendant
8  "...ultimately felt that keeping his son out of prison was worth the risk of going back to prison
9  himself."

10         The Government asserts that these explanations are a decidedly simplistic interpretation
11 of the events of the defendant's life and in no way can provide any justification for sentencing the
12 defendant below the advisory guidelines terms. Particularly objectionable is the assertion at page
13 7, lines 9-10 that the defendant risked prison to keep his son out of prison. If this "logic" was
14 actually part of the defendant's thought process, it presents a much different picture of the
15 defendant than one who valiantly tried to better himself. This is a picture that is seen clearly
16 when one considers the defendant's lengthy criminal history which was almost completely
17 ignored in his sentencing memorandum. With the number, seriousness, and consistency of
18 convictions suffered by the defendant, it is no surprise that the defendant eventually chose a path
19 that leads him to where he is today. That unfortunate and difficult circumstances of life perhaps
20 coincided with and may have had some influence over the defendant's criminal activity should
21 not be a convenient excuse or justification for his actions.

22

23                              Impact of the Defendant's Illness

24         The Government does not dispute, based on U.S.S.G. § 5H1.4 and the cases cited by the
25 defendant, that in certain cases a serious physical impairment may justify a downward departure
26 from the Sentencing Guidelines. This point also finds some support in 18 U.S.C. §
27 3553(a)(2)(D) which defendant cites in support of a related argument in Section D of his
28 sentencing memorandum. The justification for leniency under these authorities and as asserted

GOVT. REPLY BRIEF
CR 07-00345 SBA                        2

1   by the defendant is that the medical condition requires treatment that would be best given if the
2   defendant was not incarcerated. In the present case, the defendant will be sentenced to a
3   minimum of 11 years in prison. Due to that lengthy sentence, it is hard to understand how he
4   would benefit from treatment after his release in approximately 11 years as opposed to a release
5   after a sentence of 188 months. This is a situation where the defendant was well aware of his
6   illness and could not have been ingnorant based on his criminal history and the high level of
7   narcotics trafficking that he was engaging in, that if caught he would be spending a significant
8   amount of time in prison which would disrupt his medical treatment regimen. In the case cited
9   by the defendant which is most similar to the present situation, United States v. Velasquez 762
10  F.Supp. 39 (E.D.N.Y. 1991), the defendant was diagnosed with cancer while in custody.

11       It should also be emphasized that while suffering from these illnesses which now serve as
12  a basis for a request for leniency, the defendant fell back into a lifestyle involving intravenous
13  heroin use, crack cocaine and cocaine use and kilo quantity drug dealing. Attached as Exhibit 1
14  is a copy of a San Francisco Police Department Police report dated April 11, 2007, a few weeks
15  prior to the defendant's arrest in this case. The report describes contact with the defendant sitting
16  in his parked car in San Francisco with two other individuals, one of whom was later determined
17  to be armed with a handgun. According to the report, the defendant appeared to be counting
18  money because there was a large quantity of cash in the defendant's lap. Officers searched the
19  car and found $575 cash inside the center console, suspected cocaine base in the front passenger
20  compartment, $1,150 cash in plain view on the center console, $5,789 cash in a bag on the front
21  passenger floorboard and $576.78 cash in the defendant's pocket. With the assistance of a police
22  K9, another $40,985 cash was found in the trunk of the defendant's vehicle.

23       Though no large quantities of drugs were present, this incident is obviously consistent
24  (especially given the defendant's history) with narcotics trafficking and provides an additional
25  example of the type of high-risk activity that the defendant was engaged in. Coupled with the
26  defendant's drug abuse, the Government asserts that the shorter the defendant's sentence, the
27  sooner he will be able to engage in his self-destructive and unhealthy behaviors.

28

GOVT. REPLY BRIEF
CR 07-00345 SBA                3

1

The Sentence Is Not Driven By Unjust Guidelines For Crack Cocaine

2        The defendant asserts, at page 3, lines 12-14, that U.S.S.G. § 2D1.1 and its attendant

3    Criminal History Category of IV applies rather than § 4B1.1(b) and its attendant Criminal

4    History Category of VI. This issue appears to be unresolved, though the defendant also points

5    out that both calculations result in the same advisory guidelines range of 151-188 months and

6    indicates at page 4, lines 1-3 that for this reason he is prepared to accept either method of

7    calculation. Later in the memorandum, however, the defendant asserts as a basis for his request

8    for a request of a sentence of 132 months that the Sentencing Guidelines calculations for crack

9    cocaine are unjust. Under § 2D1.1, it is true that the drug quantities are combined and the

10   presence of a large amount of crack cocaine has an impact on the offense level calculation.

11       It should be pointed out, however, that calculations under § 4B1.1(b), which are largely

12   driven by the defendant's extensive criminal history rather than any differences in crack cocaine

13   versus powder cocaine sentencing guidelines, result in the same sentencing range. Given these

14   circumstances, it seems somewhat disingenous for the defendant to argue for leniency based on a

15   disparity between crack cocaine and cocaine guidelines, especially without mentioning the

16   impact that his extensive criminal history could have on sentencing.

17

18       Deterrence As To Defendant Can Be Achieved Only Through Maximum Sentencing

19       The defendant argues that an 11 year sentence, longer than any he has previously

20   received, will be an adequate deterrent. It is also noted that his age makes him statistically much

21   less likely to re-offend than younger offenders (though we are urged earlier in the memorandum

22   to ignore archetypes). In response, the Government reminds the Court of U.S.S.G. § 5H1.4

23   which is support for the proposition that drug addiction correlates to an increased propensity to

24   commit crime. The Government further asserts that if we are to ignore archetypes and look at the

25   defendant, we can be convinced of only one thing: the defendant for over 30 years has

26   demonstrated an inability to consistently function in society without committing serious crimes.

27   Nothing so far has been an adequate deterrent to his behavior. Incarceration for the maximum

28   term of 188 months is the only circumnstance which can deter the defendant.

GOVT. REPLY BRIEF
CR 07-00345 SBA                      4

1

<div align="center">Protection of the Public</div>

2    Similarly, the Government asserts that protection of the public demands the defendant's
3 incarceration for as long as legally possible. For sentencing purposes, the defendant has
4 attempted to present himself as a sympathetic figure and a victim of drug dependence. He has
5 highlighted a brief period in his life where it could appear that he functioned normally. The
6 defendant's relapse into drug use is conveniently "excused" by some trying circumstances that
7 occurred in his life and his drug dealing is rationalized as necessary to hire a lawyer to defend his
8 son. These circumstances are merely veiled attempts to portray a different person to the Court
9 for sentencing purposes than who the defendant actually was. Attached as Exhbit 2 is a copy of
10 Richmond Police Detective Pomeroy's Statement of Probable Cause supporting the state search
11 warrant that was served on the defendant's residence. Information was confidentially obtained
12 from two informants which provide a more comprehensive view of the defendant and his
13 activities. It is noted that the defendant was a major narcotics dealer who was very "cocky and
14 nonchalant" regarding his drug dealing activities.

15    Given the high level of drug dealing that the defendant was engaged in, one wonders
16 when the necessity to pay for his son's lawyer ended and when the defendant's old habits began
17 in earnest. More cynical minds would question whether lawyer fees were ever really a primary
18 factor, or whether the defendant's high level drug dealing was just a continuation of his life's
19 work, as demonstrated by his three separate convictions for sales in 1987, 1992 and 1995, all of
20 which sent him to prison. Protection of the public from this defendant demands his incarceration
21 for the maximum term.

22

23

24

25                                            ///

26

27

28

GOVT. REPLY BRIEF
CR 07-00345 SBA                        5

1

<u>Conclusion</u>

2          The government respectfully requests that the Court sentence the defendant to a

3   term of 188 months imprisonment, 3 years of supervised release, no fine, and the $100 special

4   assessment.

5

6   Dated: March 28, 2008                        Respectfully submitted,

7                                                JOSEPH P.RUSSONIELLO
                                                 United States Attorney
8
9                                                Derek Butts
                                                 Special Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVT. REPLY BRIEF
CR 07-00345 SBA                          6

# EXHIBIT 1

# San Francisco Police Department
## INCIDENT REPORT

**Report Type: Initial**

**070372704**

| | Incident Number | Occurrence from Date/Time | | Occurrence to Date/Time | | Reported Date/Time | CAD Number |
|---|---|---|---|---|---|---|---|
| **I** | 070-372-704 | 04/11/07 | 22:24 | 04/11/07 | 22:50 | 04/11/07 22:24 | 071014060 |

**N** **Type of Incident**
**C** Cocaine, Base/rock, Possession For Sale -16623, Cocaine, Transportation -16626, Firearm, Possession By
**I** Prohibited Person -12080   WEAPON, CONCEALED 12015   FIREARM, LOADED 12100

| | Location of Occurrence | At Intersection with/Premise type |
|---|---|---|
| **D** | 152 28th St | Street, (Not Sidewalk) |
| **E** | | |

| | Confidential Report? | Arrest Made? ☑ | Suspect Known? | Suspect Unknown? | Non-Suspect Incident? | Domestic Violence? ☐ | (Type of Weapon Used) | Reporting Unit 3H12E |
|---|---|---|---|---|---|---|---|---|
| **N** | | | | | | | | |

**T** **Location Sent**
159 28th St

| How Cleared? | Reported to Bureau | Name | Star | Date/ | Time | Elder Victim ☐ | Gang Related? ☐ | Juvenile Subject? ☐ | Prejudice Based? ☐ |
|---|---|---|---|---|---|---|---|---|---|
| **6** | Narcotics | Insp. Tursi | 382 | 04/11/07 23:50 | | | | | |

| **O D** | I declare under penalty of perjury, this report of ____ pages is true and correct, based on my personal knowledge, or is based on |
|---|---|

**F E** information and belief following an investigation of the events and parties involved.

**F C** **PROP 115 CERTIFIED**    **POST TRAINING**    Signature: _Ortleau_ allur

| | Reporting Officer | Star | Station | Watch | Date |
|---|---|---|---|---|---|
| **L** | Wibunsin,Michael K | 2052 | Ingleside Station | 2100-0700 | 04/12/07 12:40:36 |
| **C R** | Reviewing Officer | STAR 736 | Station //  | Watch 06/16 | Date 4/ |
| **E A** | | | | | |
| **R T** | OIC  1.7  SGR153 | STAR 857 | Station H | Watch 5 - 15 | Date 4/12/07 |
| **I O** | | | | | |
| **N** | Related Case | Related Case | Re-Assigned to | Assigned to **5N200** | Assigned by Wibunsin #2052 |
| | | | Copies to **5N200** **5N200** **5G200** | Add'l Copies DA, OR, Narc..ADP, ATF/Triggerlock |

| **R** | Code R/W 1 | Name (Last, First Middle) Atherton, Gracie | | | | | | Alias | |
|---|---|---|---|---|---|---|---|---|---|
| **/** | Day Phone (415) 648-3015 | Type Home | Home Address 159 28th St | | | City San Francisco | State CA | Zip Code |
| **W 1** | Night Phone (415) 648-3015 | Type Home | Work Address Unk | | | City | State | Zip Code |
| **I** | DOB / 01/24/47 | Age 60 | DOB Unk.☐ | or age between: and | Race W | Sex F | Height | Weight | Hair Color | Eye Color | ID Type Jurisd. | ID No. |

| **T** | | | | | | | |
|---|---|---|---|---|---|---|---|
| **N** | Confidential Person ☐ | Violent Crime Notification ☐ | 293 PC Notification ☐ | Star | Follow-up Form YES ☑ | Statement YES ☑ | Relationship to Subject Stranger/None |
| **E** | | | | | | | |
| **S** | School (if Juvenile) | Injury/Treatment None | | | | Other Information/If Interpreter Needed Specify Language 911 Caller |

| | Code B 1 | Name (Last, First Middle) Harris, Clifford | | | | | | AHAS | |
|---|---|---|---|---|---|---|---|---|---|
| **B** | Day Phone (415) 776-2882 | Type Cell | Home Address 5233 Craely Ave | | | City Richmond | State CA | Zip Code 94804- |
| **O** | Night Phone (415) 776-2882 | Type Cell | Work Address None | | | City | State | Zip Code |
| **O** | DOB Unknown ☐ | Date of Birth 02/25/56 | Age 51 | or age between and | Race B | Sex M | Height 5'06 | Weight 110 | Hair Color BLK | Eye Color BRO |
| **K 1** | SFNO 542596 | J/D# (if Juv.) ☐ | ID Type/Jurisdiction/Number CII CA A05307077 | | ID Type/Jurisdiction/Number FBI US* 425160N8 | | ID Type/Jurisdiction/Number DL CA N0454072 |
| **E** | Book Section #1 N/W11351.5 H&S N/W11352H&S | Book Section #2 | Book Section #3 | Book Section #4 | Book Section #5 | | Booking Location Ingleside Station |
| **D** | Warrant # | Court # | Action # | Dept | Enroute to | | CWB Check Veronica | Star 299 |
| | Warrant Violation(s) | | | | Bail | Mirandized ☐ | Star | Date | Time | Statement ☐ |
| | Citation # | Violation(s) | | | | Appear Date/Time | Location of Appearance |
| | Book/Cite Approval Sgt. Daniele | Star 93 | Mass Arrest Code | M X-Rays ☐ | School (if Juvenile) | | ☐ CA Form Booked Copy Attached |

Other Information: Citation/Warrant/Booking Charge(s)/Missing Person-Subject Description; Scars, Marks, Tatoos
LSW: white jacket with grn lining, and multiple multi-colored letter A's, bluke jeans. Dr. of veh

0101

## San Francisco Police Department
## ADDITIONAL REPORTEE

**070372704**

RP CODES: F -FOUND; N -NOTIFY;P -PARENT; R -REPORTEE; V -VICTIM; W -WITNESS

### REPORTEE 2

| Code | Name (Last, First Middle) | | | | | | Alias | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| R 2 | Miranda, John E | | | | | | | | | |

| Day Phone | Type | Home Address | | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| (415) 879-1050 | Cell | 840 Juno Lane | | | | | Foster City | | CA | 94404- |

| Night Phone | Type | Work Address | | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| (415) 879-1050 | Cell | Unk | | | | | | | | |

| DOB/ | Age | DOB or age between AND | Race | Sex | Height | Weight | Hair Color | Eye Color | ID No. |
|---|---|---|---|---|---|---|---|---|---|
| 12/20/65 | 41 | Unk ☐ | H | M | 5'09 | 170 | BLK | BRO | CII A07638025 CA |

| Confidential Person ☐ | Violent Crime Notification ☐ | 293 PC Notification ☐ | Star | F/U Form YES ☐ | Statement YES ☑ | Relationship to Subject Parent |
|---|---|---|---|---|---|---|

| School (if Juvenile) | Injury/Treatment | Other Information/If Interpreter Needed Specify Language |
|---|---|---|
| | None | Parent of (B3) Miranda |

### REPORTEE 3

| Code | Name (Last, First Middle) | | | | | | ALIAS | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| R 3 | Leboy, Nina | | | | | | | | | |

| Day Phone | Type | Home Address | | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| (415) 756-2952 | Cell | 840 Juno Lane | | | | | Foster City | | CA | 94404- |

| Night Phone | Type | Work Address | | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| (415) 756-2952 | Cell | Unk | | | | | | | | |

| DOB/ | Age | DOB or age between AND | Race | Sex | Height | Weight | Hair Color | Eye Color | ID No. |
|---|---|---|---|---|---|---|---|---|---|
| 09/02/65 | 41 | Unk ☐ | W | F | 5'06 | 130 | BRO | BRO | CII A08112566 CA |

| Confidential Person ☐ | Violent Crime Notification ☐ | 293 PC Notification ☐ | Star | F/U Form YES ☐ | Statement YES ☑ | Relationship to Subject Parent |
|---|---|---|---|---|---|---|

| School (if Juvenile) | Injury/Treatment | Other Information/If Interpreter Needed Specify Language |
|---|---|---|
| | None | Step mother of (B3) Miranda |

| Code | Name (Last, First Middle) | | | | | | ALIAS | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Day Phone | Type | Home Address | | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Night Phone | Type | Work Address | | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| DOB/ | Age | DOB or age between AND | Race | Sex | Height | Weight | Hair Color | Eye Color | ID No. |
|---|---|---|---|---|---|---|---|---|---|
| | | Unk ☐ | | | | | | | |

| Confidential Person ☐ | Violent Crime Notification ☐ | 293 PC Notification ☐ | Star | F/U Form YES ☐ | Statement YES ☐ | Relationship to Subject |
|---|---|---|---|---|---|---|

| School (if Juvenile) | Injury/Treatment | Other Information/If Interpreter Needed Specify Language |
|---|---|---|
| | | |

| Code | Name (Last, First Middle) | | | | | | Alias | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Day Phone | Type | Work Address | | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Night Phone | Type | WORK ADDRESS | | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| DOB/ | Age | DOB or age between AND | Race | Sex | Height | Weight | Hair Color | Eye Color | ID No. |
|---|---|---|---|---|---|---|---|---|---|
| | | Unk ☐ | | | | | | | |

| Confidential Person ☐ | Violent Crime Notification ☐ | 293 PC Notification ☐ | Star | F/U Form YES ☐ | Statement YES ☐ | Relationship to Subject |
|---|---|---|---|---|---|---|

| School (if Juvenile) | Injury/Treatment | Other Information/If Interpreter Needed Specify Language |
|---|---|---|
| | | |

SFPD377 B (03/03)

**070372704**

## San Francisco Police Department
## ADDITIONAL SUSPECTS

### Suspect B 2

| CODE B 2 | Name (Last, First Middle) Jackson, Christopher | | | | | | | Alias | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Day Phone (415) 253-8756 | Type Cell | Home Address 440 Fulton St #B | | | | | | City San Francisco | | State CA | Zip Code 94102- |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Night Phone (415) 253-8756 | Type Cell | Work Address Unk | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|

| School (if Juvenile) | Race B | Sex M | DOB Unknown ☐ | DOB 03/11/70 | Height 505 | Weight 150 | Hair Color BLK | Eye Color BRO |
|---|---|---|---|---|---|---|---|---|

| SFNO 437456 | J/D# (if Juv.) | ID No. CII 08821540 CA | ID No. FBI 464935.JA6 US* | | ID No. SSN 554395615 US* | |
|---|---|---|---|---|---|---|

| Book/Charge 1 N/W11351.5H&S | Book/Charge 2 | Book/Charge 3 | Book/Charge 4 | Book/Charge 5 | Where Booked Ingleside Station |
|---|---|---|---|---|---|

| Warrant # 637588 | Court # 38460 | Action # | Dept 13 | Enroute To Local SF Warrant | | CWB Check Veronica | Star 299 |
|---|---|---|---|---|---|---|---|

| Warrant Violation(s) 242 PC, FTA | | Bail $25,000.00 | Mirandized ☐ | Star | Date/Time | Statement ☐ |
|---|---|---|---|---|---|---|

| Citation # | Violation(s) | Appear Date/Time | Location of Appearance |
|---|---|---|---|

| Book/Cite Approval Sgt. Daniele | Star 93 | Mass Arrest Code | M X-Rays ☐ | | |
|---|---|---|---|---|---|

Other Information: Citation/Warrant/Booking Charge(s)/Missing Persons-Subject Description/Scars, Marks, Tatoos
seated in front right passenger seat

**PVT PERSON ARREST**

☐ ORIGINAL PRIVATE PERSON'S ARREST FORM BOOKED AS EVIDENCE.  PHOTOCOPY ATTACHED WITH THIS REPORT.

### Suspect B 3

| CODE B 3 | Name (Last, First Middle) Miranda, Johnny | | | | | | | Alias | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Day Phone | Type Unknown | Home Address 333 Fell St #303 | | | | | | City San Francisco | | State CA | Zip Code |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Night Phone | Type Unknown | Work Address Unknown | | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|---|---|---|

| School (if Juvenile) | Race H | Sex M | DOB Unknown ☐ | DOB 03/30/88 | Height 601 | Weight 145 | Hair Color BLK | Eye Color BRO |
|---|---|---|---|---|---|---|---|---|

| SFNO 616305 | J/D# (if Juv.) | ID No. CII A27193063 CA | ID No. FBI 501070LC5 US* | | ID No. DL D6350361 CA | |
|---|---|---|---|---|---|---|

| Book/Charge 1 N/W11351.5 H&S | Book/Charge 2 N/W12025(b)(6) | Book/Charge 3 N/W11370.1(a) | Book/Charge 4 12031(a)(1)PC | Book/Charge 5 | Where Booked Ingleside Station |
|---|---|---|---|---|---|

| Warrant # | Court # | Action # | Dept | Enroute To | | CWB Check Veronica | Star 299 |
|---|---|---|---|---|---|---|---|

| Warrant Violation(s) | | Bail | Mirandized ☐ | Star | Date/Time | Statement ☐ |
|---|---|---|---|---|---|---|

| Citation # | Violation(s) | Appear Date/Time | Location of Appearance |
|---|---|---|---|

| Book/Cite Approval Sgt. Daniele | Star 93 | Mass Arrest Code | M X-Rays ☐ | | |
|---|---|---|---|---|---|

Other Information: Citation/Warrant/Booking Charge(s)/Missing Persons-Subject Description/Scars, Marks, Tatoos
LSW: blk peacoat jacke, blue jeans, and blk sneakers. Seated in right rear passenger seat

**PVT PERSON ARREST**

☐ ORIGINAL PRIVATE PERSON'S ARREST FORM BOOKED AS EVIDENCE.  PHOTOCOPY ATTACHED WITH THIS REPORT.

**070372704**

# San Francisco Police Department
## PROPERTY LISTINGS

| E | Code/No EVD 1 | Item Description Rocks | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| 1 | Serial No. | | Gun Make | Caliber | Color WHI | Narcotics Lab No. 07238090 | Quantity 2 | Value TBD |

Seized by (Star) 2052 — From Where (T1) vehicle's center console

Additional Description/Identifying Numbers
off-white rock substance, suspected cocaine base/rock.

| E | Code/No EVD 2 | Item Description Revolver | | | | Brand Smith&Wesson | Model | |
|---|---|---|---|---|---|---|---|---|
| 2 | Serial No. 74J852 | | Gun Make SMITH & WESSON | Caliber 38 | Color BLK | Narcotics Lab No. | Quantity 1 | Value TBD |

Seized by (Star) 1600 — From Where Concealed under (B3) Miranda's left foot inside his left high-top sneaker

Additional Description/Identifying Numbers
Smith&Wesson revolver fully loaded with five (E3) bullets. Brown wooden grips.

| E | Code/No EVD 3 | Item Description bullets | | | | Brand FD | Model | |
|---|---|---|---|---|---|---|---|---|
| 3 | Serial No. | | Gun Make | Caliber 38 Special | Color SIL | Narcotics Lab No. | Quantity 5 | Value TBD |

Seized by (Star) 1600 — From Where (E2) gun

Additional Description/Identifying Numbers

| E | Code/No EVD 4 | Item Description U.S. Currency | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| 4 | Serial No. | | Gun Make | Caliber | Color GRN | Narcotics Lab No. | Quantity | Value $40,985.00 |

Seized by (Star) 2052 — From Where (F1) vehicle's trunk

Additional Description/Identifying Numbers
U.S currency of various denominations ($100.00 x 135, $50.00 x 58, $20.00 x 1,024, $10.00 x 227, $5.00 x 367) amounting to $40,985.00

| E | Code/No EVD 5 | Item Description U.S. Currency | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| 5 | Serial No. | | Gun Make | Caliber | Color GRN | Narcotics Lab No. | Quantity | Value $5,789.00 |

Seized by (Star) 2052 — From Where (F1) vehicle's front passenger floor. wrapped in plastic bag, stuffed yellow bag

Additional Description/Identifying Numbers
U.S. currency of various denominations ($100.00 x 2, $20.00 x 197, $10.00 x 103, $5.00 x 51, $1.00 x 364) amounting to $5,789.00.

| E | Code/No EVD 6 | Item Description U.S. Currency | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| 6 | Serial No. | | Gun Make | Caliber | Color GRN | Narcotics Lab No. | Quantity | Value $575.00 |

Seized by (Star) 2052 — From Where (F1) vehicle's center console

Additional Description/Identifying Numbers
U.S. currency of various denominations ($50.00 x 1, $20.00 x 14, $10.00 x 14, $5.00 x 21) amounting to $575.00 wrapped in a bundle by a rubberband

| E | Code/No EVD 7 | Item Description U.S. Currency | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| 7 | Serial No. | | Gun Make | Caliber | Color GRN | Narcotics Lab No. | Quantity | Value $1,150.00 |

Seized by (Star) 2052 — From Where (F1) vehicle's center console next to the gear box          0104

Additional Description/Identifying Numbers
U.S. currency of various denominations ($100.00 x 11, $20.00 x 2, $5.00 x 2) amounting to $$1,150.00

070372704

# San Francisco Police Department PROPERTY LISTINGS

| E | Code/No | Item Description | Brand | Model |
|---|---|---|---|---|
| 8 | EVD 8 | U.S. Currency | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| | | | GRN | | | $576.78 |

| Seized by (Star) | From Where |
|---|---|
| 1992 | (B1) Harris' left front pants pocket |

Additional Description/Identifying Numbers
U.S. currency of various denominations ($100.00 x 1, $50.00 x 1, $20.00 x 14, $10.00 x 6, $5.00 x 17, $1.00 x 1, and coins) amounting to $576.78

| E | Code/No | Item Description | Brand | Model |
|---|---|---|---|---|
| 9 | EVD 9 | U.S. Currency | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| | | | GRN | | | $151.00 |

| Seized by (Star) | From Where |
|---|---|
| 399 | (B2) Jackson's left front pants pocket |

Additional Description/Identifying Numbers
U.S. currency of various denominations ($100.00 x 1, $20.00 x 1, $10.00 x 3, $1.00 x 1) amounting to $151.00

| E | Code/No | Item Description | Brand | Model |
|---|---|---|---|---|
| 10 | EVD 10 | U.S. Currency | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| | | | GRN | | | $913.00 |

| Seized by (Star) | From Where |
|---|---|
| 399 | (B2) Jackson's inner left jacket pocket |

Additional Description/Identifying Numbers
U.S. currency of various denominations ($100.00 x 3, $20.00 x 8, $10.00 x 19, $5.00 x 47, $1.00 x 28) amounting to $913.00

| E | Code/No | Item Description | Brand | Model |
|---|---|---|---|---|
| 11 | EVD 11 | U.S. Currency | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| | | | GRN | | | $101.80 |

| Seized by (Star) | From Where |
|---|---|
| 1600 | (B3) Miranda's left front pants pocket |

Additional Description/Identifying Numbers
U.S. currency of various denominations ($50.00 x 1, $5.00 x 10, $1.00 x 1, and coins) amounting to $101.80

| E | Code/No | Item Description | Brand | Model |
|---|---|---|---|---|
| 12 | EVD 12 | Money Order | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| | | | | | 3 | $680.00 |

| Seized by (Star) | From Where |
|---|---|
| 2052 | (E13) Plastic Bag that was in the trunk. |

Additional Description/Identifying Numbers
Money orders from various vendors ($280.00 from Money Gram, $50.00 from Continental Express, and $350.00 from Western Union).

| E | Code/No | Item Description | Brand | Model |
|---|---|---|---|---|
| 13 | EVD 13 | Plastic Bag | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| | | | WHI | | 1 | N/A |

| Seized by (Star) | From Where |
|---|---|
| 2052 | (F1) vehicle's trunk |

Additional Description/Identifying Numbers
"Georgio's Designer Menswear" plastic bag containing (E4) U.S. currency, (E12) money orders, white "Dollar Tree" plastic bag, and "College Newspaper."

| E | Code/No | Item Description | Brand | Model |
|---|---|---|---|---|
| 14 | EVD 14 | Plastic Bag | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| | | | CLR | | 1 | N/A |

| Seized by (Star) | From Where |
|---|---|
| 2052 | (F1) vehicle's center console |

Additional Description/Identifying Numbers
Plastic sandwich-type bag containing (E1) rocks, suspected cocaine base/rocks.

0105

**070372704**

# San Francisco Police Department
# PROPERTY LISTINGS

| E | Code/No EVD 15 | Item Description Floppy Discs | | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 1 5 | Serial No. | | Gun Make | Caliber | Color BLK | | Narcotics Lab No. | Quantity 3 | Value N/A |
| | Seized by (Star) 1992 | From Where | | | | | | | |
| | Additional Description/Identifying Numbers Floppy Discs containing twenty three (23) digital photos of the original scene, (F1) vehicle, (E1) rocks, (E2) gun, (E3) bullets, (E4-E7) U.S. currency | | | | | | | | |

| E | Code/No EVD 16 | Item Description Misc. Financial Statements | | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 1 6 | Serial No. | | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity | Value |
| | Seized by (Star) 1992 | From Where (F1) vehicle's center console | | | | | | | |
| | Additional Description/Identifying Numbers | | | | | | | | |

| E | Code/No EVD 17 | Item Description Statements | | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 1 7 | Serial No. | | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity 2 | Value |
| | Seized by (Star) 1992 | From Where | | | | | | | |
| | Additional Description/Identifying Numbers written statements by Officers Weidman #1600 and De Jesus #1992 regarding their involvement in the incident | | | | | | | | |

| E | Code/No EVD 18 | Item Description Wallet | | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 1 8 | Serial No. | | Gun Make | Caliber | Color BLK | | Narcotics Lab No. | Quantity 1 | Value TBD |
| | Seized by (Star) 1992 | From Where (F1) vehicle's front passenger seat | | | | | | | |
| | Additional Description/Identifying Numbers Wallet containing misc. cards and a CDL (B8897548) bearing the name of Jaehong Min, AM, DOB 10/08/1982. | | | | | | | | |

| E | Code/No EVD 19 | Item Description Property Receipts | | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 1 9 | Serial No. | | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity 3 | Value N/A |
| | Seized by (Star) 1992 | From Where (B1) Harris, (B2) Jackson, and (B3) Miranda | | | | | | | |
| | Additional Description/Identifying Numbers | | | | | | | | |

| E | Code/No EVD 20 | Item Description Strip Search Forms | | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 2 0 | Serial No. | | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity 3 | Value |
| | Seized by (Star) 1992 | From Where | | | | | | | |
| | Additional Description/Identifying Numbers Strip search forms for the search of (B1-B3) Harris, Jackson, and Miranda. | | | | | | | | |

| | Code/No | Item Description | | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|---|
| | Serial No. | | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity | Value |
| | Seized by (Star) | From Where | | | | | | | |
| | Additional Description/Identifying Numbers | | | | | | | | |

0106

## San Francisco Police Department
## VEHICLE INFORMATION

**070372704**

VEHICLE CODES:  B -BOOSTED; D -DAMAGED; F -USED FELONY; T -TOWED; U -USED OTHER; V -VANDALIZED; X -STRIPPED

### Vehicle 1

| Code | Plate No. | State | Reg Yr | Plate Type | VIN No. |
|---|---|---|---|---|---|
| T | 4VVM149 | CA | 2008 | PC | JNKBF01A42M003556 |

| Veh Year | Make | | | | Model |
|---|---|---|---|---|---|
| 2002 | Infinity | | | | Q45 |

| Style | | Color | | Plates/VIN Match? | Plates Missing? |
|---|---|---|---|---|---|
| Sedan, 4 door | | White | | ☑ | FRONT ☑ REAR ☐ |

Condition (Check all that apply): APPARENTLY DRIVABLE ☑ BURNED? ☐ DAMAGED? ☐ STRIPPED? ☐  Damage: ____ Point of Entry: ____

| Crime Scene Tech. Notified? ☐ | 387 Form Given to Owner? ☐ | Tow Approved By (Name) Sgt. Daniele | Star 93 | Towed to (Name/Address) Auto Return | Tow Check (Name) | Star |
|---|---|---|---|---|---|---|

Hold For: No Holds    Other Information: ____

**OWNER**
Registered Owner Business Name/Last Name: Harris   First Name: Clifford   Residence Phone: ____
Residence Address: 5233 Creely Ave   City: Richmond   State: CA   Zip: 94804–   Business Phone: ____

### Vehicle 2

| Code | Plate No. | State | Reg Yr | Plate Type | VIN No. |
|---|---|---|---|---|---|
| U | 2HCZ890 | CA | 2008 | PC | 1G2HX54C0JW244556 |

| Veh Year | Make | | | | Model |
|---|---|---|---|---|---|
| 1988 | Ponitac | | | | Bonneville |

| Style | | Color | | Plates/VIN Match? | Plates Missing? |
|---|---|---|---|---|---|
| Sedan, 4 door | | White | | ☑ | FRONT ☐ REAR ☐ |

Condition (Check all that apply): APPARENTLY DRIVABLE ☑ BURNED? ☐ DAMAGED? ☑ STRIPPED? ☐  Damage: frt pass window broken  Point of Entry: ____

| Crime Scene Tech. Notified? ☐ | 387 Form Given to Owner? ☐ | Tow Approved By (Name) | Star | Towed to (Name/Address) | Tow Check (Name) | Star |
|---|---|---|---|---|---|---|

Hold For: ____    Other Information: Driven away by (R2) John Miranda

**OWNER**
Registered Owner Business Name/Last Name: Diaz   First Name: Simon   Residence Phone: ____
Residence Address: 4920 S. Escalon Bellaota Rd   City: Farmington   State: CA   Zip: 95230–   Business Phone: ____

### Vehicle 3

| Code | Plate No. | State | Reg Yr | Plate Type | VIN No. |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

| Veh Yr | Make | | | | Model |
|---|---|---|---|---|---|
|  |  | | | |  |

| Style | | Color | | Plates/VIN Match? | Plates Missing? |
|---|---|---|---|---|---|
|  | |  | | ☐ | FRONT ☐ REAR ☐ |

Condition (Check all that apply): APPARENTLY DRIVABLE ☐ BURNED? ☐ DAMAGED? ☐ STRIPPED? ☐  Damage: ____ Point of Entry: ____

| Crime Scene Tech. Notified? ☐ | 387 Form Given to Owner? ☐ | Tow Approved By (Name) | Star | Towed to (Name/Address) | Tow Check (Name) | Star |
|---|---|---|---|---|---|---|

Hold For: ____    Other Information: ____

**OWNER**
Registered Owner Business Name/Last Name: ____   First Name: ____   Residence Phone: ____
Residence Address: ____   City: ____   State: ____   Zip: ____   Business Phone: ____

**070372704**

## San Francisco Police Department
## NARRATIVE

On 04/11/2007 at approximately 2224 hrs., Officer De Jesus #1992 and I were on duty and working a marked police vehicle and were both in full police uniform. We were dispatched to 159 28th St regarding a report of a suspicious vehicle described as a white sedan with broken glass window. Dispatch advised us that one of the occupants of the vehicle was pushing the broken glass out onto the reporting party's driveway.

Upon approaching the above location traveling westbound on 28th St from Dolores St, Officer De Jesus and I noticed a (T1) white four-door Infiniti sedan (LP: CA 4VVM149) parked in front of 152 28th St also facing westbound. Directly to the left of the above vehicle's driver's side door, I saw shattered glass clearly visible on the ground. I directed my spotlight at the driver's side door area of this vehicle to gain a better visual. I did not see any glass in the driver's side door window and I believed that the broken glass beneath was from the driver's side window of this vehicle. As Officer De Jesus and I exited our vehicle to investigate the incident, I observed (B1) Harris seated in the driver's seat looking back in our direction as he started to steer his vehicle into the westbound lane of traffic. I instructed Harris to stop the vehicle and he complied.

Upon walking up to the driver's side of the vehicle, I saw a large sum of cash in various denominations spread out on Harris' lap and in Harris' hands as if he was counting the money. I noticed (B2) Jackson seated in the front passenger seat. Jackson voluntarily had his hands up on the dash board without being instructed to do so. I also noticed Johnny Miranda in the right rear seat talking on a cell phone. I told Harris the reason for the detention and asked for his identification. Harris gave me his driver's license. Jackson and Johnny Miranda told me that they did not have any identification, but verbally gave me their names and date of births.

It should be noted that while conducting an interview with Harris a (U) white Pontiac Bonneville (LP: CA 2HCZ890) pulled up next to me. The passenger, later identified as (R3) Leboy, yelled directly at me, stating "That's my son in the car, what are you doing?" Due to the fact that the driver of this vehicle had to stop in the middle of lane of traffic, thus impeding the flow of traffic and posing a serious officer's safety issue for me, I instructed the driver, later identified as (R2) John Miranda, to move his vehicle and told them I would speak to them upon rendering the scene safe.

John Miranda and Leboy parked their vehicle and walked towards Harris' vehicle in an attempt to find out what was going on. Officer De Jesus instructed them to stand back at a safe distance in a manner in which our officer's safety would not be jeopardized. John Miranda and Leboy complied and waited.

A computer record check of the above occupants of Harris' vehicle revealed that Jackson had an outstanding misdemeanor warrant for 242 PC and that Johnny Miranda is on probation for 11357(c) H&S/M, Court #2281510 with a warrantless search allowed as a condition of probation through 10/16/2008.

3H14E, Officers Jefferson #806 and Weidman #1600 responded to the scene. I asked Jackson to step out of the vehicle and placed him under arrest for the warrant. Jackson stated, "Are you taking me in for a traffic warrant?" I advised him that it was in fact a misdemeanor warrant with the above bail amount. I asked Johnny Miranda to step out of the vehicle and placed him in handcuffs. Johnny Miranda told me that he was on probation as a result of his prior conviction of possession of marijuana. I then advised Harris to step out of the vehicle in order to conduct a search incident to arrest of Jackson as well as a probation search of Johnny Miranda. Harris gathered all of the cash that had been on his lap and put this money into his left pants pocket.

Officer De Jesus and I conducted the search of the vehicle. I opened the middle console directly in between the driver's and front passenger's seats and saw (E6) U.S. currency wrap in a bundle with a rubber-band. The bundle of cash contained various denominations, later determined to be $575.00. In this console, I also saw a clear plastic sandwich-type bag containing two off-white rocks, suspected cocaine base/rock. I located U.S. currency of various denominations, later determined to be $1,150.00, laying in plainview between the gearbox and center console. Officer De Jesus directed my attention to (E5) U.S. currency of various denominations, later determined to be $5,789.00 all wrapped in a plastic bag and stuffed in a nylon-type yellow bag located on the vehicle's front passenger floor. Based on my training and experience in narcotics investigation, the presence of suspected cocaine base/rocks and large amount of cash in varying denominations recovered were consistent with possession for sale of narcotics. Upon being informed of the discovery, Officer De Jesus placed Harris under arrest for possession for sale and transportation of base/rock cocaine, per N/W11351.5 H&S and N/W 11352 H&S respectively. Jackson and Johnny Miranda were both placed under arrest for possession for sale of base/rock cocaine, per N/W11351.5 H&S.

Suspecting that there might be more narcotics in the vehicle, I requested a K-9 narcotics unit to assist in the search. 4T99, Officer Cole #850 and his K-9, Rockl #8 arrived and continued the search. Upon Officer Cole's request, I seized the above contraband as evidence prior to Rockl conducting the 'sniff' of the vehicle. Rockl did not find any additional contraband inside the vehicle's interior. Rockl, however, alerted Officer Cole to a (E13) white plastic bag in the trunk of the vehicle by pawing at the bag in a rapid and excited manner. Officer Cole and I inspected the bag and saw a large amount of cash of various denominations, later determined to be $40,985.00. This money was inside another white "Dollar Tree" plastic bag. Officer Cole told me that Rockl's reaction to the content of the bag he discovered signified that the subsequent currency found came into contact with or was in close proximity to narcotics.

Sgt. Redmond #1757 responded to the scene and took (E15) digital photos of the vehicle and the currency found. 3H13E, Officers Baldovino #2074 and Asare #399 responded to the scene and transported Jackson to Ingleside Station. Officer Weidman transported Johnny to Ingleside Station, while Officer Jefferson drove the above vehicle to Ingleside Station for further inspection upon the approval of Sgt. Redmond. Sgt. Redmond and Officer De Jesus transported Harris to Ingleside Station.

I made contact with John Miranda, who told me that he came to drop off money to his son, Johnny Miranda. John Miranda stated that prior to the arrival of police, he was driving the Bonneville and he pulled up next to Harris' car, at which time the front passenger's side window of the Bonneville, being off track, shattered as Leboy tried to roll down the window. John Miranda stated that he then moved his car into a driveway across the street (159 28th St.) and went to meet with Johnny Miranda to give him money he requested. It was not long after this incident that Officer De Jesus and I arrived on scene.

John Miranda and Leboy were never detained and provided the above information to us willingly. They eventually left the scene in their Bonneville.

I made contact with the (R1) Atherton, the 911 caller, at her residence. Atherton was hesitant to give information as to what was going on, but told me that she saw a car in her driveway with an occupant in the passenger's side pushing broken glass onto her driveway.

The following event occurred while I was still at the scene on 28th St: While conducting a booking counter search of Johnny Miranda at Ingleside Station, Officer Weidman recovered a (E2) revolver loaded with (E3) five bullets from under his left foot inside his high-top sneaker. This revolver was fully concealed. Officer Weidman seized the revolver containing five bullets as evidence. Johnny Miranda was additionally charged with possession of a loaded firearm per 12025(B)(6) PC, possession of a concealed firearm per 12031(a)(1) PC, and possession of a firearm while in control

of narcotic substance per 11370.1(a) H&S (note: see end of this report regarding Johnny Miranda's prior convictions). Officer Weidman also recovered (E11) U.S. currency of various denominations from Johnny Miranda's left front pants pocket, later determined to be $101.80. Also see (E17) Officer Weidman's written statement regarding her involvement in the incident. Also see Officer Weidman's statement which includes the names of Officers who witnessed the seizure of this revolver.

Officer De Jesus recovered a (E8) bundle of cash of various denominations from Harris' left pants pocket, later determined to be $576.78. Officer De Jesus seized it as evidence.

Officer Asare recovered and took into evidence (E9-E10) U.S. currency of various denominations from Jackson's left front jeans pocket and inner left jacket pocket, later determined to be $151.00 and $913.00 respectively.

I notified 5N101 Sgt. Insp. Tursi #382 who responded to Ingleside Station to take over the investigation. Insp. Tursi and I conducted an interview with Johnny Miranda, Harris, and Jackson (See Insp. Tursi's Chronological Report).

After Harris' vehicle had been taken to Ingleside Station, Officer De Jesus recovered and seized (E16) Miscellaneous financial statements from the vehicle's center console pending further investigation into their sources of origin.

Officer De Jesus recovered and seized a (E18) wallet, found on the front passenger's seat, containing miscellaneous bank cards and CDL(B8897548) bearing the name of Jaehong Min with a DOB of 10/08/1982. Sgt. Insp. Tursi conducted a QALL query for a possible hit on the above name with negative results. I contacted Mountain View PD to see whether the Jaehong Min had reported his wallet stolen or missing and was advised that there was no such report made.

Upon the approval of Sgt. Insp. Tursi, Harris' vehicle was towed to Auto Return. No hold were placed on this vehicle.

Upon the approval of Sgt. Redmond, Officer De Jesus conducted a strip search on the Harris, Jackson, and Miranda, but did not find any narcotics on their persons.

Harris, Jackson, and Johnny Miranda were booked for the above charges and warrant upon the approval of Sgt. Daniele.

Officer De Jesus wrote a statement regarding his involvement in the incident.

Officer De Jesus removed the two rocks, suspected base/rock cocaine, from the plastic sandwich-type bag and booked the bag separately with a hold for prints. Officer Asare hand carried the suspected base/rock cocaine to the narcotic drop box at 850 Bryant St. I booked the (E20) strip search forms as evidence at Ingleside Station. Officer De Jesus booked all the remaining property into evidence at Ingleside Station.

A review of Johnny Miranda's criminal history showed the conviction for 11357(c) H&S/M and a conviction as a juvenile for 487(c) PC/F.

It should be noted that Harris has a long rap sheet with prior arrests for violent crimes, narcotics, and firearm violations.

Jackson also had a long rap sheet with narcotics related arrests and convictions.            0110

It should be further noted that John Miranda and Leboy (parents of Johnny Miranda) both have

criminal records. John's rap sheet is long with many narcotics related arrest. John is currently on probation in San Mateo County for 11350 H&S.

Preliminary checks on the status of the seized revolver showed no record.

# EXHIBIT 2

# STATEMENT OF PROBABLE CAUSE

I, Detective Pomeroy (Affiant) have been a Police Officer for the City of Richmond approximately nine (9) years and a total of thirteen (13) years. I am currently assigned to the Investigation Services Bureau.

Approximately two (2) months ago, I spoke to a Confidential Reliable Informant, hereafter referred to as CRI. The CRI told me that "Cliff" was a major narcotics dealer in Central Richmond. The CRI said he/she has seen "Cliff" drive around Richmond with a nylon gym bag of narcotics, with both Cocaine and Heroin inside of it and a nylon gym bag of U.S. Currency. The CRI told me "Cliff" was very cocky and nonchalant about selling illegal narcotics. The CRI last saw Cliff with narcotics in November 2006.

Approximately six (6) weeks ago, I met with a separate Confidential Informant, hereafter referred to as CI. I asked the CI if he/she knew "Cliff" who sells narcotics in Central Richmond. The CI was aware of "Cliff" and told me his name was Clifford Harris (Date of Birth 02/25/1956). The CI told me Cliff was the name that he went by and that he was "HIV +". I located and showed the CI a picture of Clifford Harris and the CI positively identified that person as "Cliff."

The CI said Cliff sells large amounts of Cocaine and Heroin. This CI confirmed the CRI's statement that Cliff is very cocky and nonchalant about his illegal narcotics activity. The CI last saw Cliff with narcotics in February 2007.

Within the last 21 days, I talked to the CI, who said Cliff was arrested and he had a large sum of US Currency seized from him and a firearm was found when he was arrested. The CI was not sure where he was arrested but said it was in the Bay Area.

I reviewed Clifford Harris' criminal history and it showed an arrest in San Francisco on April 12, 2007. I contacted San Francisco Police Department Narcotics Detective Britt Elmore. I told him of the information that I knew and he volunteered to research the case and find out the facts of the case.

Det. Elmore called me back shortly after our conversation. He told me that Harris' was arrested in the Sunnydale portion of San Francisco after the police were called for some suspicious activity. There were three (3) people in a vehicle, which turned out to be Harris'. The three (3) occupants were searched and approximately $5,000 in US Currency was found on Harris' person. SFPD searched Harris' vehicle and found Cocaine Base in the common area of the vehicle. They again searched all three occupants. A Hispanic male that was present had a firearm in his shoe. SFPD searched the trunk of Harris' vehicle and found approximately $40,000 in US Currency. SFPD arrested Harris' on narcotic charges and the Hispanic male for the firearm. Harris told SFPD that he was there to buy narcotics, but had not made the purchase yet. All of the US Currency was seized by SFPD. Det. Elmore said there were no charges filed against Harris, but firearms charges against the Hispanic male were filed.

Within the last ten days, I spoke to the Confidential Reliable Informant (CRI), who said that he/she met with Cliff and saw that he was in possession of Cocaine Base.

I have had conversations with the CRI about narcotics and how they look, along with the street terms for narcotics. I felt after our conversations that the CRI is knowledgeable in illegal narcotics.

I reviewed Richmond Police Department's "In-House" computer system and learned that Clifford Harris used an address of 5233 Creely Ave. Richmond, California. Harris was involved in a vehicle collision on January 24, 2007. In February 2006, he was a witness to a Murder and in October 2006, Harris was the victim of a burglary. Harris also received citations from Richmond Police Department in September 2006 and February 2007. All of these contacts Harris used the address 5233 Creely Ave. Richmond, California.

I reviewed Harris' criminal history and learned that it dated back to 1974. The following are charges that Harris' has been arrested for:

11359 H&S, 12025 PC, 12031PC, 496 PC, 211 PC, 487.2 PC, 261.2 PC, 207 PC, 459 PC, 245 (a) PC, 246 PC, 12021 PC, 11351 H&S, 11351.5 H&S, 11352 H&S



0037

Harris' has been convicted of the following crimes:

12025 PC and 12031 PC (1976), 23101 VC (DUI) (1976), 330 PC (1976), 487.2 PC (1976), 211 PC (1977), 11350 H&S (1977) 12021 PC, 11351 H&S, 11351.5 H&S, 11352 H&S (1987), 11351 H&S and 11352(a) H&S (1992), 11352.5 H&S and 11352 H&S (1995).

Harris' has done four (4) separate prison terms in the California Department of Corrections. Prior to the April 12, 2007 arrest in San Francisco the previous arrest of Harris was in 1997.

Within the seven days, I showed the CRI a picture of Clifford Harris. The CRI positively identified Harris as the person he/she knows as "Cliff."

Det. Santiago with the Contra Costa County Sheriff's Office primarily used the CRI. I have spoken with Det. Santiago about the CRI. He told me that the CRI has never given information that he has known to be false. Det. Santiago has been working with CRI since approximately 2003. During that time the CRI has made approximately thirty (30) purchases of illegal narcotics for Det. Santiago. Some of those controlled buys led to indictments on narcotics and gang charges. The CRI has given Contra Costa County Sheriff's Detectives fruitful information regarding a Homicide investigation. I have used information from the CRI and written a search warrant. Narcotics were located during the search warrant in locations that the CRI had provided.

The CRI is providing information for monetary purposes.

I wish to keep the identity of the informant(s) confidential because I believe that the disclosure of the informant's identity would alert those engaged in criminal activity of the identity of the informant(s). This identification would jeopardize the future usefulness of the informant to law enforcement. Additionally, I am aware of numerous incidents where informants have been threatened, harmed and killed by those engaged in criminal activity once the informant's identity has become known. Therefore I am requesting that the specifics of this information be kept in a sealed affidavit. See sealed portion of affidavit.